UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ESTATE OF EARL CLARENCE GEORGE,


                                    Plaintiff,

                                                                    DECISION AND ORDER

                                                                    10-CV-6515L

              v.

VETERAN'S ADMINISTRATION MEDICAL CENTER,


                                    Defendant.

_____

UNITED STATES OF AMERICA,



                          Third-Party Plaintiff,

              v.

JAMIE L. DE GAUGH,



                          Third-Party Defendant.

_____


       This action was commenced by the estate ("Estate" or "plaintiff") of Earl Clarence George

("decedent") against the Veteran's Administration Medical Center ("VAMC" or "Government") in

Canandaigua, New York, in New York State Supreme Court, Ontario County.[1]  The VAMC removed

_____

       [1]According to the website of the United States Department of Veterans Affairs, the
correct name of the VAMC is "Canandaigua VA Medical Center."  *See*

                                                                    (continued...)

the action to this Court on September 9, 2010, pursuant to 28 U.S.C. § 1442(a)(1), on the ground that the action is one for money damages against an agency of the United States.

The Government has now moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that the Court lacks subject matter jurisdiction over plaintiff's claims. The basis for that assertion is plaintiff's alleged noncompliance with the exhaustion requirements of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671-2680.

## BACKGROUND

According to the complaint, at the time of his death on April 11, 2008, decedent was a resident of the VAMC. On or about May 22, 2008, the VAMC transferred over $35,000 that had belonged to decedent to one Jamie DeGaugh. Complaint ¶¶ 6, 10.

In a letter dated March 12, 2009, the Estate's then-attorney, John P. Morell, wrote to Craig S. Howard, the director of the VAMC, asserting that "the VA wrongly turned over the decedent's personal property and funds to Jamie DeGaugh," and "demand[ing] that the Estate be immediately given $35,331.09 plus the value of the [decedent's] personal property." Def. Ex. A.[2] Morell indicated that the decedent (who apparently died intestate) had several living heirs, one of whom, a niece, was the administrator of the Estate. *Id.* Morell further stated that the estate had commenced an action against DeGaugh, but had been informed by her attorney that DeGaugh had spent the entire $35,000 and had no assets. *Id.* Morell concluded the letter by asking Howard to call him, adding, "We would like to resolve this matter in an amicable manner without litigation and going to the media." *Id.*

---

[1](...continued)
http://www.canandaigua.va.gov/. The name given above is the one used in the complaint.

[2]Plaintiffs have submitted an unsigned copy of that letter dated March 11, 2009. The copy submitted by the VAMC, dated March 12, 2009, is signed. Whether the letter was sent on March 11 or 12 is inconsequential, however.

In a letter to Morell dated April 3, 2009, Howard stated that he had "forwarded [Morell's] letter" to the Regional Counsel Office for the Department of Veterans Affairs ("VA"). Det. Ex. B. Howard added that he "believed [that the VAMC] acted appropriately" regarding the disposition of the decedent's property, however. *Id.*

On April 20, 2009, Morell wrote to Sheila Weimer, an attorney with the VA, stating, "I spoke to you last week regarding [the disposition of the decedent's property] and you requested that I forward to you the letter that I sent to the Director of the Canandaigua VA Medical Center." Morell stated that he was enclosing a copy of that letter and Howard's April 3 response. Def. Ex. B.

In a letter dated April 27, 2009, Weimer informed Morell that "it is the position of [the VA] that the funds and effects of the late Earl C. George were disposed of in accordance with VA regulations," because the decedent "had previously named Jaime DeGaugh as his designee for purposes of disposition of his personal funds and effects." Def. Ex. C. Weimer concluded that "[t]his matter is one for the Surrogate's Court to resolve," and that should that court determine that the decedent's next of kin were entitled to inherit the property at issue, "their recourse for recovery of the funds and effects is to bring an action against Ms. Jaime DeGaugh." *Id.*

In September 2009, plaintiff's current attorney, Keith R. Lord, replaced Morell as counsel in this matter. On January 3, 2010, Lord submitted to the VA a Form SF-95, which is a government-issued form for making a "claim for damage, injury, or death." Dkt. #9-2 at 5. The stated basis for the claim was that "[t]he VA Medical Center in Canandaigua released all assets of the claiming estate to a non-distributee in violation of law and their fiduciary duties to the estate of the decedent." The claim (which included losses for both money and personal property that had been transferred to DeGaugh) was stated to total $58,332.[3]

In a letter dated January 25, 2010, Weimer stated to Lord, "We [*i.e.* the VA] are compelled to return the form and enclosures to you as it fails to perfect a claim against the United States under

---

[3]For reasons that are not apparent, two different amounts, $58,332 and $58,331, are listed at different places on the form. *See* Dkt. #9-2 at 12a and 12d.

the Federal Tort Claims Act." Dkt. #9-2 at 8. Weimer explained that Lord had not included with his submission any letters of administration evidencing Lord's authority to act on behalf of the Estate. Weimer added that Lord "[was], of course, free to resubmit a claim on behalf of the Estate," though she "remind[ed him] that the limitation period of submission of a claim under the FTCA is two years from the date of act or omission given rise [sic] to same, after which any such claim would be barred by operation of the statute." *Id.*

On or about March 9, 2010, the Estate submitted another SF-95, signed by the decedent's niece, Marlene Keirsbilck, accompanied by documentation showing that she had been appointed administrator of the Estate. Dkt. #9-2 at 10-15. The form stated that the Estate's losses totaled $58,332.

Plaintiff commenced the instant action in state court on April 28, 2010. The complaint asserts claims for negligence and breach of fiduciary duty. As stated, defendant removed the action to federal court on September 9, 2010.

When plaintiff commenced this action, then, the Estate's administrative claim that had been presented to the VA in the March 2010 SF-95 was still pending. Not until November 9, 2010 did the VA, by letter to plaintiff's attorney, issue a written "final administrative action" denying the Estate's claim. Dkt. #9-2 at 17. The letter further advised Lord that if he and the Estate were dissatisfied with the VA's decision, they had the option of either filing a request for reconsideration with the VA General Counsel, or filing suit under the FTCA. The letter also explained some of the procedural requirements and time limitations that would apply should the Estate choose either course of action. *Id.* at 17-18.

In the meantime, the VAMC had filed its answer in this action on October 14, 2010. That answer asserted several affirmative defenses, including lack of jurisdiction and plaintiff's failure to exhaust administrative remedies. Dkt. #2 at 2.

Plaintiff did not take any further action in direct response to the VA's November 9, 2010 denial.  Plaintiff did not seek reconsideration from the VA, and as explained, plaintiff had already commenced this lawsuit.

On March 2, 2011, Assistant United States Attorney Kathryn L. Smith sent a letter to Lord, stating that based upon her review of the administrative record in this case, Smith believed that "the filing of this action on April 26, 2010, raises a jurisdictional issue because the action was instituted before the Veterans Administration denied plaintiffs' administrative claim."  Dkt. #9-3 at 25-26. Stating that she "would like to try to resolve this issue without resorting to a motion to dismiss," Smith suggested "that we stipulate to a dismissal of the present action without prejudice to your timely refiling your complaint within the applicable time limit under 28 U.S.C. § 2401(b)."  She asked Lord to contact her to discuss the matter.  *Id.* at 26.  Smith states in a sworn declaration that she received no response to this letter, and Lord does not contend otherwise.  *See* Dkt. #9-3 at 2, ¶ 5.

## DISCUSSION

### I. Procedural Requirements for FTCA Claims

The Estate does not dispute that its claims here are properly construed as claims under the FTCA, which effects "a limited waiver of the United States's sovereign immunity, to permit persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court."  *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (quoting *Molzof v. United States*, 502 U.S. 301, 304 (1992)).  In order to sue under the FTCA, however, a plaintiff must comply with certain procedural requirements, including the exhaustion of the claimant's administrative remedies prior to filing suit.

The FTCA provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).

To comply with the "presentment" requirement, the claim must be in writing and be for a sum certain.  *Deutsch v. United States*, 67 F.3d 1080, 1092 (3d Cir. 1995); *Ahmed v. United States*, 30 F.3d 514.  Regulations promulgated pursuant to the FTCA also require that the claim be accompanied by the title or legal capacity of the person signing the form, and by evidence of such person's authority to present the claim on behalf of the claimant.  28 C.F.R. § 14.2(a).  Although the claim may be presented by means of a Form SF-95, "other written notification" will suffice, so long as it otherwise meets the FTCA's requirements.  *Kokotis v. U.S.P.S.*, 223 F.3d 275, 278 (4th Cir. 2000); 28 C.F.R. § 14.2(a).

The FTCA also sets forth specific time periods both for filing claims and for instituting judicial actions.  Specifically, an administrative claim must be filed "within two years after [the] claim accrues ... ."  28 U.S.C. § 2401(b).  Beginning upon the agency's "final denial of the claim," or the expiration of six months after the presentation of the claim, whichever comes first, the claimant then has six months within which to either commence a lawsuit or seek reconsideration of the denial.  *Id.*; *see Valadez-Lopez v. Chertoff*, ___ F.3d ___, 2011 WL 3805890, at *2 (9th Cir. 2011) (plaintiff may not file FTCA action in court "without first filing her claim with an appropriate federal agency and either receiving a conclusive denial of the claim from the agency or waiting for six months to elapse without a final disposition of the claim being made") (internal quote omitted); 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section"); 28 CFR § 14.9 (dealing with requests for reconsideration).  A claim that does not meet these requirements is "forever barred ... ."  28 U.S.C. § 2401(b).

"The FTCA's statute of limitations is jurisdictional and not subject to equitable tolling or estoppel. Thus, FTCA claimants must strictly adhere to the statute of limitations or lose the right to invoke federal jurisdiction." *Adams v. United States*, ___ F.3d ___, 2011 WL 3929589, at *4 (9th Cir. 2011) (quoting *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir.), *cert. denied*, ___ U.S. ___, 130 S.Ct. 796 (2009)). *See also In re FEMA Trailer Formaldehyde Products Liability Litigation*, 646 F.3d 185, 189 (5th Cir. 2011) ("The FTCA's statute of limitations is jurisdictional, and a claimant is required to meet both filing deadlines") (citation omitted); *Czetwertynski v. United States*, 514 F.Supp.2d 592, 595 (S.D.N.Y. 2007) ("FTCA exhaustion is 'jurisdictional'; it cannot be waived") (citing *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983)). Because the FTCA operates as a waiver of sovereign immunity, these procedural requirements are strictly construed. *See O'Rourke v. Smithsonian Institution Press*, 399 F.3d 113, 122 (2d Cir.), *cert. denied*, 546 U.S. 814 (2005); *Styles v. United States*, No. 10-CV-862, 2011 WL 710165, at *2 (W.D.N.Y. Feb. 22, 2011) ("the requirement under the FTCA to pursue and to exhaust administrative remedies before filing suit 'is jurisdictional and cannot be waived'") (citing *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)).[4]

---

[4]In *Dolan v. U.S.P.S.*, 546 U.S. 481, 491-92 (2006), the Supreme Court stated that the "general rule that a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign, ... is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." (Citations and internal quotation marks omitted.) *See also Devlin v. United States*, 352 F.3d 525, at 534-35 n.10 (2d Cir. 2003) (noting "the variety of judicial pronouncements on how the FTCA should be construed" and stating that "these approaches 'cancel out'").

In *Dolan*, however, the Court was considering whether an exception to the FTCA's waiver of sovereign immunity for claims arising out of the "loss, miscarriage, or negligent transmission of letters or postal matter" barred a claim that mail negligently left on the petitioner's porch caused her to slip and fall. *Id.* at 485 (quoting 28 U.S.C. § 2680(b)). What is at issue in the case at bar is not an exception to the sovereign-immunity waiver, but a jurisdictional prerequisite to suit. Such requirements are strictly applied. *See Vacek v. U.S.P.S.*, 447 F.3d 1248, 1250–51 (9th Cir. 2006) ("[Courts] have repeatedly held that the exhaustion requirement [of the FTCA] is jurisdictional in nature and must be interpreted strictly"), *cert. denied*, 550 U.S. 906 (2007); *Royster v. United States*, No. Civ. A. 07-228, 2010 WL 936764, at *4 (W.D.Pa. Mar. 11, 2010) (stating that "presentation of an administrative claim in accordance
(continued...)

Finally, because exhaustion of an FTCA claim is jurisdictional, it is the plaintiff who bears the burden of showing that its claim has been exhausted. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) ("The burden is on the plaintiff to plead and prove compliance with § 2401(b)") (citing *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987)); *Sherman-Amin-Braddox:Bey v. McNeil*, No. 10-CV-5340, 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011); *Accolla v. United States*, 636 F.Supp.2d 304, 307 (S.D.N.Y. 2009)).

## II. Application to this Case

Applying these principles to the case at bar, I conclude that plaintiff has not complied with the prerequisites for filing suit under the FTCA, that this Court therefore lacks subject matter jurisdiction over plaintiff's claims, and that the complaint must be dismissed.

The first question is when plaintiff first presented its claim to the VA. Several possible dates exist. The first of these is March 12, 2009, the date of Morell's letter to Howard at the VAMC. That was a written notification of the Estate's claim, setting forth the factual basis for the claim, for a sum certain. The letter was also accompanied by copies of court documents from the Estate's action against DeGaugh in Surrogate's Court, indicating that the Estate was represented by Morell. *See* Def. Ex. A. That letter thus appears to meet the requirements for presentment of a claim.

That claim, however, was denied on April 27, 2009, when Weimer sent Morell a letter setting forth the VA's position that the decedent's funds and effects had been properly disposed of in accordance with VA regulations.

Plaintiff thus would have had six months from April 27, 2009, within which to act, either by filing a lawsuit or by requesting reconsideration. Although the Estate now contends that it did timely

---

[4](...continued)
with 28 U.S.C. § 2675(a) is a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against the government under the FTCA").

request reconsideration, the evidence fails to support that assertion or to create any issues of fact in that regard.

In an unsworn affirmation, attorney Lord states that plaintiff's file, which Morell turned over to him in September 2009 after Lord was substituted as plaintiff's attorney, contains a letter dated July 21, 2009, from Morell to Weimer, "wherein Attorney Morrell [sic] re-presented Plaintiff's claim to the Veteran's Administration ... ." Dkt. #12 ¶ 10. Plaintiff has submitted a copy of that letter. Dkt. #12 Ex. A. The letter is identical to Morell's April 20, 2009 letter to Weimer, except that the date has been changed from April 20 to July 21, and, unlike the April 20 letter, the July 21 letter is unsigned. The body of the letter, however, is exactly the same as in the April 20 letter, including Morell's statement, "I spoke to you last week regarding the above captioned matter and you requested that I forward to you the letter that I sent to the Director of the Canandaigua VA Medical Center." The Government contends that it has no record of ever having received the July 21 letter.

The purported July 21 letter fails to show that plaintiff timely requested reconsideration of the VA's April 27, 2009 denial of the Estate's claim. For one thing, Lord himself has no personal knowledge of how, when or why this letter was created, or what if anything was done with it other than putting a copy of the letter in plaintiff's file. *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 n.5 (2d Cir. 1998) (affidavit that is not based on the affiant's personal knowledge would be insufficient to create genuine issue of fact); *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (same). There is no evidence that the letter was ever mailed or that it was received by the addressee or anyone else at the VA.

In fact, to the extent that any inference can reasonably be drawn from this letter, the letter itself suggests that it was *not* mailed. It is unsigned, and Morell's statements in the letter that he "spoke to [Weimer] last week"–exactly as he had stated in his April 20 letter–and that Weimer had asked him for a copy of his March 12 letter to Howard (a copy of which she had already received

with Morell's April 20 letter) make it appear highly unlikely that the letter dated July 21, 2009 was in fact mailed to Weimer.[5]

At any rate, there is *no* evidence that the letter *was* mailed.  As stated, it is plaintiff's burden to prove exhaustion, *Johnson*, 189 F.3d at 189, and in the absence of such evidence, I find that there is no basis for a finding that the Estate timely requested reconsideration of the VA's April 27, 2009. If the March 12, 2009 letter were considered to have effected plaintiff's presentment of a claim to the VA, then, plaintiff's time to file suit or seek reconsideration expired on October 27, 2009, six months after Weimer denied plaintiff's claim.

Alternatively, one could consider the effective written claim here to be the SF-95 filed by Keirsbilck on March 9, 2010.  That claim was denied exactly eight months later, on November 9, 2010.

The Estate, however, did not wait for the VA to act on its claim, or for six months to pass from the filing of its claim before filing suit.  Rather, the Estate filed its complaint in this action on April 28, 2010, while the administrative claim was still pending.[6]

In other words, the complaint was filed *before* plaintiff had exhausted its administrative remedies.  The law is clear that a complaint filed under such circumstances must be dismissed. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit"); *accord Accolla v. United States Gov't*, 369 Fed.Appx. 408, 409 (3d Cir. 2010); *Estate of Barrett v. United States*, 462 F.3d 28, 36-37 (1st Cir. 2006), *cert. denied*, 550 U.S. 936 (2007).

---

[5]Weimer states that she spoke to Morell by telephone on April 15, 2009, at which time she did ask him to send her a copy of his March 2009 letter to Howard, but that she had no contact with Morell after May 12, 2009.  Dkt. #14 at 12-13, ¶¶ 5, 6, 13.

[6]The SF-95 filed on January 10, 2010 was essentially a nullity, since the VA returned it for failure to include the appropriate letters of authority.  Even if the January 10 SF-95 were treated as a "presented" claim, however, plaintiff's commencement of this lawsuit was premature, for the same reasons stated with respect to the March 9 SF-95.

Plaintiff's suggestion that the Court should grant it leave to refile the complaint pursuant to the doctrine of equitable tolling is not well taken.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  "Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances."  *A.Q.C. ex rel. Castillo v. United States*, ___ F.3d ___, 2011 WL 3926557, at *7 (2d Cir. 2011) (internal quotation marks and alteration omitted).  *See also Veltri v. Building Serv. 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances").

Plaintiff has not demonstrated any such circumstances here.  The Government did nothing to prevent or hinder plaintiff's exhaustion of remedies before commencing this action; in fact, the Government's attorney, Smith, offered a suggestion to plaintiff's attorney that, if taken, might have resolved the exhaustion problem, but apparently she received no response to her March 2, 2011 letter.  A plaintiff cannot use its own, or its attorney's, lack of diligence as a basis to invoke equitable estoppel.  *See Castillo*, ___ F.3d at ___, 2011 WL 3926557, at *7-*9.

Finally, I note that the limitations period under the FTCA has run, and that it would therefore be futile for plaintiff to refile a judicial action now.  The latest date on which the six-month limitations period under 28 U.S.C. § 2401(b) could have started is November 9, 2010, when Weimer denied plaintiff's claim that had been presented in the March 9, 2010 SF-95.  The six-month limitations period for commencing an action in court, then, ended no later than May 9, 2011.  Plaintiff did not seek reconsideration or file a judicial action during that six-month window, and as explained, its previously-filed complaint must be dismissed for lack of subject matter jurisdiction.

Refiling or amending the complaint now, then, would be futile.  Any newly commenced action would be time barred, and could not cure the premature filing, and consequent absence of subject matter jurisdiction, with respect to plaintiff's original complaint.  *See Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("as a general rule, a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit") (citation omitted); *Boege v. Gallagher*, No. CIV. 10-00565, 2011 WL 2746324, at *1 (D.Hawai'i, July 11, 2011) ("Insofar as the exhaustion of administrative remedies under the FTCA is a jurisdictional requirement, a plaintiff cannot cure the premature filing of an FTCA complaint simply by filing an amended complaint"); *see, e.g.*, *Waters v. Anonymous Hosp. A*, No. 10-cv-00983, 2011 WL 1458161, at *3-*4 (S.D.Ind. Apr. 14, 2011) (denying leave to amend prematurely-filed FTCA complaint).  To rule otherwise "would be inconsistent with case law and the rationale behind the jurisdictional prerequisite mandated by the FTCA."  *Hurt v. Smith*, No. 09-cv-00698, 2011 WL 43474, at *3 ( E.D.Cal. Jan. 06, 2011).

## CONCLUSION

Defendant's motion to dismiss (Dkt. #9) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 1, 2011.